UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:04-CV-1838-ORL-22-JGG

ESSEX BUILDERS GROUP, INC.,

       Plaintiff,

v.

AMERISURE INSURANCE COMPANY and
ONEBEACON INSURANCE COMPANY,

       Defendants.

TRAVELERS CASUALTY & SURETY CO.,
as the Subrogee of ESSEX BUILDERS GROUP,
INC.,

       Intervenor.
_____/

AMERISURE INSURANCE COMPANY,

       Third Party Plaintiff/Cross-Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY;
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA; ONE BEACON INSURANCE
COMPANY, F/K/A GENERAL ACCIDENT INSURANCE
COMPANY OF AMERICA; MARYLAND CASUALTY
COMPANY; GREAT AMERICAN INSURANCE
COMPANY; ASSURANCE COMPANY OF AMERICA;
NATIONAL TRUST INSURANCE COMPANY;
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
A/K/A ST. PAUL INSURANCE COMPANY,

       Third Party Defendants/Cross-Defendants.
_____/

### AMERISURE INSURANCE COMPANY'S
### THIRD PARTY CLAIMS AND CROSS-CLAIM

Defendant/Cross-Plaintiff, Amerisure Insurance Company (hereinafter referred to as "Amerisure"), hereby brings this its third party claim and cross-claim and in support thereof would state the following:

### PARTIES

1.      Plaintiff, Amerisure, is a foreign insurance company authorized to do business in the State of Florida.

2.      Third Party Defendants/Cross-Defendants, Liberty Mutual Fire Insurance Company (hereinafter "Liberty"), National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union"), One Beacon Insurance Company, f/k/a General Accident Insurance Company of America (hereinafter "One Beacon"), Maryland Casualty Company (hereinafter "Maryland Casualty"), Great American Insurance Company (hereinafter "Great American"), Assurance Company of America (hereinafter "Assurance Company"), National Trust Insurance Company (hereinafter "National Trust"), and St. Paul Fire & Marine Insurance Company, a/k/a St. Paul Insurance Company (hereinafter "St. Paul"), are all foreign insurers authorized to do business in the State of Florida.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 since there is diversity of citizenship between the original parties and the amount in controversy is greater than $75,000.  Because there is diversity of citizenship between the original Plaintiffs and

2

Defendants in this action, this Court has supplemental jurisdiction over these additional claims pursuant to 28 U.S.C. § 1367 which provides this Court with supplemental jurisdiction.

4.      Venue is appropriate in this Court because the acts underlying this Complaint occurred within this territorial jurisdiction of this district and division. Specifically, the acts underlying the coverage issues occurred in Orange County, Florida.

<u>BACKGROUND</u>

5.      Amerisure is an insurer of the entity, Essex Builders Group, Inc. (hereinafter "Essex"). Essex is a general contractor doing business in Orange County, Florida. Essex entered into a contract to act as a general contractor on a project known as the Greens Apartments Phase II, A&B (said project is also generally referred to as the "Eaglewood complex"). Subsequent to completion of the project, the developer of the Eaglewood project (Archon Group, LP, et al.) and the owner (WR-TGR Real Estate Limited Partnership, et al.) brought claims against Essex asserting that there had been certain construction deficiencies in the project. As a result of this claim for coverage, Essex submitted a claim against Amerisure. Eventually, the claim brought by the developer and owner on the Eaglewood project against Essex was settled when the bonding company for Essex, Travelers Casualty & Surety Company (hereinafter "Travelers"), made a payment of $6.25 million to resolve the claim. The claim brought by the owner and developer of the Eaglewood complex will hereinafter be referred to as the "Eaglewood owner's claim."

3

6.    Subsequent to resolving the Eaglewood owner's claim, Travelers brought an action against Essex to recover the $6.25 million paid by Travelers under the bond. Further, Travelers sued four subcontractors retained by Essex to work on the Eaglewood project, these subcontractors being Beckner Painting - Southeast, Inc. (hereinafter "Beckner Painting"), Builders Firstsource - Atlantic Group, Inc. (hereinafter "Builders Firstsource"), Farris Gypsum Floors of Florida, Inc. (hereinafter "Farris Gypsum"), Professional Plastering & Stucco, Inc. (hereinafter "Professional Plastering"). Attached hereto as Exhibit "1" is a copy of the Complaint filed by Travelers. Said action will hereinafter be referred to as the "Travelers claim." As a result of the Travelers claim, Essex has presented a further claim for coverage against Amerisure.

7.    Essex has filed claims for coverage against Amerisure in relation to the Eaglewood owner's claim and the Travelers claim. Travelers has filed claims for coverage against Amerisure in relation to the Eaglewood owner's claim. Attached hereto as Exhibit "2" is the Complaint that has been filed by Essex against Amerisure. Attached hereto as Exhibit "3" is the Complaint in Intervention that has been filed by Travelers against Amerisure. In conjunction with said Complaints, both Essex and Travelers seek a declaration that Amerisure affords coverage for the Eaglewood owner's claim. Essex also seeks a ruling there is coverage for the Travelers claim.

8.    While acting as subcontractors on the Eaglewood project, Beckner Painting, Builders Firstsource, Farris Gypsum, and Professional Plastering all entered into subcontracts with Essex which were written on the same basic subcontract form. Attached hereto as

Exhibit "4" is the subcontract entered into by Beckner Painting.  Attached hereto as Exhibit "5" is the subcontract entered into by Builders Firstsource.  Attached hereto as Exhibit "6" is the subcontract entered into by Farris Gypsum.  Attached hereto as Exhibit "7" is the subcontract entered into by Professional Plastering. In each of these subcontract agreements, the various subcontractors agreed to maintain liability insurance coverage, and agreed to make Essex an additional insured under their various liability policies.  These specific insurance requirements are set forth in Article X of each subcontract and in Exhibit "I" labeled "Insurance Requirements" of each subcontract.  Specifically, each of the subcontractors required that Essex be listed as an additional insured in regards to the general liability policy of each subcontractor.  Additionally, it was required that at least $2,000,000 in coverage be provided by each subcontractor to Essex.  If the general liability policy maintained by the subcontractor did not have $2,000,000 in limits, then Essex was required to be an additional insured under the subcontractor's umbrella policy.

9.    In conjunction with the insurance requirements set forth in the various subcontracts, Essex received multiple certificates of insurance regarding the Eaglewood project referencing that they were an additional insured under multiple policies of insurance issued to the subcontractors.  Specifically, Essex received the following certificates of insurance confirming that they were additional insureds under the following listed policies of insurance:

a.    Certificate of insurance relating to Builders Firstsource referencing a general liability policy issued by Liberty Mutual and an umbrella policy issued by National Union (see Exhibit "8");

b.    Certificate of insurance relating to Builders Firstsource referencing a general liability policy issued by Liberty Mutual and an umbrella policy issued by National Union (see Exhibit "9");

c.    Certificate of insurance relating to Beckner Painting referencing a general liability policy issued by One Beacon and an umbrella policy issued by One Beacon (see Exhibit "10");

d.    Certificate of insurance relating to Beckner Painting referencing a general liability policy issued by Maryland Casualty and an umbrella policy issued by Great American (see Exhibit "11");

e.    Certificate of insurance relating to Professional Plastering referencing a general liability policy issued by Assurance Company and an umbrella policy issued by Assurance Company (see Exhibit "12");

f.    Certificate of insurance relating to Professional Plastering referencing a general liability policy issued by National Trust and an umbrella policy issued by National Trust (see Exhibit "13");

g.    Certificate of insurance relating to Farris Gypsum referencing a general liability policy issued by St. Paul and an umbrella policy issued by St. Paul (see Exhibit "14");

h.    Certificate of insurance relating to Farris Gypsum referencing a general liability policy issued by St. Paul and an umbrella policy issued by St. Paul (see Exhibit "15").

10.    Liberty issued a liability policy to Builders Firstsource that was in effect from April 1, 1999 to April 1, 2000. See Exhibit "16." Liberty also issued a policy to Builders Firstsource that was in effect from April 1, 2000 to April 1, 2001. See Exhibit "17."

11.    National Union issued a policy to Builders Firstsource that was in effect from April 1, 1999 to April 1, 2000. See Exhibit "18." National Union also issued a policy to Builders Firstsource that was in effect from April 1, 2000 to April 1, 2001. See Exhibit "19."

12.    One Beacon issued a primary and an umbrella policy to Beckner Painting that were in effect from July 1, 1999 to July 1, 2000.  See Exhibit "20" and "21."

13.    Maryland Casualty issued a policy to Beckner Painting that was in effect from April 19, 2000 to April 19, 2001.  See Exhibit "22."

14.    Great American issued a policy to Beckner Painting that was in effect from April 19, 2000 to April 19, 2001.  (Amerisure does not have a copy of said policy in its possession, but it is referenced in the certificate of insurance attached hereto as Exhibit "11.").

15.    Assurance Company issued a primary and an umbrella policy to Professional Plastering that were in effect from December 10, 1999 to March 24, 2000.  Copies of those policies are attached hereto as Exhibit "23" and "24."

16.    National Trust issued both a primary and an umbrella policy to Professional Plastering that were in effect from March 24, 2000 to March 24, 2001.  See Exhibits "25" and "26."

17.    St. Paul issued a primary and an umbrella policy to Farris Gypsum that were in effect from November 1, 1999 to November 1, 2000.  (Amerisure does not have a copy of said policies, but they are referenced in the certificate of insurance attached hereto as Exhibit "14.").

18.    St. Paul also issued a primary and an umbrella policy to Farris Gypsum that was in effect from November 1, 2000 to November 1, 2001.  (Amerisure does not have a

copy of said policies, but they are referenced in the certificate of insurance attached hereto as Exhibit "15.").

19.    All of the policies of insurance issued to the various subcontractors which are referenced in paragraphs 10 through 18 above contain provisions making Essex an additional insured under said policies.  Further, the Eaglewood owner's claim and the Travelers claim allege wrongdoing while these policies were in effect.  Also, to the extent Amerisure may afford any coverage for Essex, said claims would also fall within the coverage terms and provisions of the subcontractors' policies.  Thus, each of the policies referenced in paragraphs 10 through 18 above afford coverage (at least a duty to defend) to Essex for the claims that are the subject matter of this litigation.  Further, to the extent that Essex may be actually insured by Amerisure for the claims in this litigation, Essex would also be covered under the various policies issued to the subcontractors referenced above.

20.    One Beacon also issued a policy directly to Essex that was in effect from November 1, 1999 to November 1, 2000.  A copy of said policy is attached to the Plaintiff's initial Complaint herein (see Exhibit "2" at Exhibit "A").  Additionally, Essex is also covered by a policy issued by Great American that was in effect from November 11, 1999 to November 11, 2000.  Amerisure does not have a copy of said policy in its possession, but a certificate of insurance referencing said policy is attached hereto as Exhibit "27."  To the extent that Amerisure may afford any coverage to Essex for the Eaglewood owner's claim and the Travelers claim, the One Beacon and Great American policies also afford coverage for said claims.

8

21.     There exists an actual and bona fide dispute between and amongst Amerisure and all other insurers named in this Third Party Complaint and Cross-Claim regarding the extent to which the various policies of insurance afford coverage for the Eaglewood owner's claim and the Travelers claim, and how the policies which afford coverage would interact with each other in regards to said claims.

22.     Due to this bona fide dispute between the parties, Amerisure is in doubt as to its rights and obligations and also in doubt as to its rights and obligations as to the other insurers named herein.

<u>COUNT I</u>

<u>CLAIM FOR DECLARATORY JUDGMENT IN REGARDS</u>
<u>TO ALL POLICIES OF INSURANCE</u>

23.     This is an action for declaratory judgment pursuant to 28 USC § 2201.

24.     Paragraphs 1 through 22 above are incorporated herein by reference.

25.     As indicated previously herein, Essex has potentially available to it multiple policies of insurance for the Eaglewood owner's claim and the Travelers claim.

26.     It is thereby requested that this Court enter a declaratory judgment addressing the following issues:

> A.    Which policies of insurance available to Essex afford coverage for the Eaglewood owner's claim and the Travelers claim and the extent to which said policies afford coverage;

> B.    Which policies of insurance have an obligation to pay for the defense of the

       Eaglewood owner's claim and the Travelers claim (if any);

C.  How the various policies of insurance interact and how they should be layered in regards to the Eaglewood owner's claim and the Travelers claim, both as to the duty to indemnify and the duty to defend.

27.  It is the position of Amerisure that (1) to the extent the Amerisure policy may be found by the Court to afford coverage for the Eaglewood owner's claim and/or the Travelers claim, that the policies referenced in this Complaint would also afford coverage for said claims, (2) due to the other insurance clauses in the policies and Florida law on interaction of insurance policies that Amerisure is excess to some and/or all of the other policies of insurance referenced in this third party complaint and cross-claim in regards to any duty to defend, and (3) due to the provisions on Florida law on layering of insurance policies, for purposes of making indemnity payments, that some and/or all of the insurance policies referenced in this cross-claim/third party complaint are required to pay any loss before Amerisure.

28.  Therefore, Amerisure respectfully requests that this Court enter a declaratory decree establishing the rights of the insurers referenced herein in regards to both the Eaglewood owner's claim and the Travelers claim. Amerisure also respectfully requests that this Court award attorney's fees and costs pursuant to the provisions of Florida Statute § 627.428. Amerisure has the right to recover said attorney's fees and costs because it is pursuing claims that Essex as the insured would have against these various other insurer

Defendants.  It is also requested that Amerisure be awarded its costs in pursuit of this claim and any other further relief this Court deems appropriate in issuing a declaratory decree.

<u>COUNT II</u>

<u>CLAIM FOR EQUITABLE CONTRIBUTION AND</u>
<u>EQUITABLE AND CONTRACTUAL SUBROGATION</u>

29.     This is an action for equitable contribution and equitable/legal subrogation against all insurance carriers named in this cross-claim and third party complaint.

30.     Paragraphs 1 through 22 above are incorporated herein by referenced.

31.     As an insurance carrier against whom demands have been made by Essex, Amerisure is equitably and legally subrogated to all rights that the insured may have against any other insurance carrier.  This includes the right to seek a declaration of coverage and payment from other insurance carriers for the amounts that these carriers would legally owe as coverage for defense and indemnity for the Eaglewood owner's claim and the Travelers claim.

32.     To the extent that this Court declares that Amerisure affords any coverage for the claims brought in the Eaglewood owner's claim and the Travelers claim, Amerisure has the right to seek equitable contribution and/or equitable/contractual subrogation against all other insurance carriers who may also afford coverage for Essex for the Eaglewood owner's claim and the Travelers claim.  Further, to the extent that Essex is entitled to receive any money from Amerisure for defense and/or indemnity related to the Eaglewood owner's claim and the Travelers claim, Amerisure is entitled to receive from the Defendant insurers herein

11

some and/or all of the monies that Amerisure may be legally obligated to pay. Thus, pursuant to the provisions of Florida law, Amerisure seeks recovery against the Defendant insurers herein pursuant to the doctrines of equitable subrogation and/or equitable/legal subrogation.

33.     Therefore, Amerisure respectfully requests that this Court enter a judgment against the Defendant insurers herein in the amount of some and/or all of any defense costs that Amerisure may be required to pay in regards to the Eaglewood owner's claim and the Travelers claim. Additionally, Amerisure respectfully requests that this Court enter a judgment against the Defendant insurers herein in the amount of some and/or all of any indemnity amounts that Amerisure is declared to owe in regards to the Eaglewood owner's claim and the Travelers claim. Amerisure also requests that it be awarded attorney's fees and costs pursuant to the provisions of Florida Statute § 627.428. Amerisure has the right to recover said attorney's fees and costs because it is pursuing claims that Essex as the insured would have against the various insurer Defendants. It is also requested that Amerisure be awarded its costs in pursuit of this claim and any other further relief this Court deems appropriate.

I HEREBY CERTIFY that on June 22, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Robert P. Major, Esq., Winderweedle, Haines, Ward & Woodman, P.A., P.O. Box 1391, Orlando, FL 32802-1391; Stephen A. Marino, Jr., Esq., Ver Ploeg & Lumpkin, P.A., 100 S.E. Second Street, Suite 2150, Miami, FL 33131-2151; Stacy L.

Lightfoot, Esq., Shuffield, Lowman & Wilson, P.A., 1000 Legion Place, Suite 1700,

Orlando, FL 32801; M. Jarrett Coleman, Esq., Cozen O'Connor, 1717 Main Street, Suite

2300, Dallas, TX 75201; and Brett D. Divers, Esq., Mills, Paskert, Divers, P.A., 100 North

Tampa Street, Suite 2010, Tampa, FL 33602. I further certify that the foregoing document

and the notice of electronic filing will be served on each of the Third Party Defendant/Cross-

Defendants.

s/ Chris Ballentine
CHRIS BALLENTINE
Florida Bar No. 434205
Fisher, Rushmer, Werrenrath, Dickson,
Talley & Dunlap, P.A.
20 N. Orange Avenue, Ste. 1500
Post Office Box 712
Orlando, FL  32802-0712
(407) 843-2111
(407) 422-1080
cballentine@fisherlawfirm.com

ATTORNEYS FOR AMERISURE
INSURANCE COMPANY

L:\CMB\Essex\PLEADING\ThirdPartyClaims.CrossClaims\CMB/djb