**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ESSEX BUILDERS GROUP, INC.,**

       **Plaintiff,**

-vs-                                      Case No. 6:04-cv-1838-Orl-22JGG

**AMERISURE INSURANCE COMPANY**
**and PENNSYLVANIA GENERAL**
**INSURANCE COMPANY,**

       **Defendants.**

## ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** MOTION FOR LEAVE TO FILE UNDER SEAL UNREDACTED COPIES OF COUNSELS' BILLING RECORDS AND ITS FEE AGREEMENT (Doc. No. 378)
>
> **FILED:** February 23, 2007
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

Plaintiff, Essex Builders Group, Inc. ("Essex"), seeks to recover attorneys' fees and costs against Amerisure Insurance Company ("Amerisure") pursuant to the Court's order at Docket 375. Amerisure was one of approximately ten other parties involved in this litigation. Essex seeks to recover over $800,000 in attorneys' fees based on a lodestar calculation, plus a contingency fee multiplier. Docket 379. Essex has filed redacted copies of its billing statements in support of its

motion for attorneys' fees. Essex asserts that it has redacted information from the billing statements that are protected by attorney-client and/or attorney work product privileges.

Essex seeks leave to file unredacted copies of its billing statements and its fee agreement with the Court so that the Court can determine the nature and the extent of the work performed and whether it is appropriate to charge that work to Amerisure. Essex has not provided Amerisure with copies of the unredacted billing statements. Although Amerisure does not dispute that Essex's records contain "privileged information," (Docket 381 at 4), Amerisure argues that it should be allowed to review the unredacted billing records to determine whether it has a basis to contest specific time entries. Docket 381 at 2.

Assuming the billing statements and fee agreement contain privileged information,[1] Essex has impliedly waived the privilege. It has long been recognized that "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994).

---

[1] The Court has some doubt as to whether the records qualify for a privilege. Essex does not establish that the fee agreement it seeks to file under seal contains any privileged information. Indeed, Essex cites *Thomas v. F.F. Financial, Inc.*, 128 F.R.D. 192 (S.D.N.Y. 1989), for the proposition that fee arrangements are not confidential communications protected by the attorney-client privilege. Docket 378 at 4.
    As to the billing statements, the Court finds it unlikely that confidential attorney-client communications are contained in the billing records. Further, although the billing statements may reflect an attorneys' thought processes or strategy, it is questionable that the billing statements are protected by the attorney work product doctrine.
    To qualify for work product protection, "the primary motivating purpose behind the creation of the document" must be to aid in possible future litigation. *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). Thus, for example, papers generated by an attorney who prepares a tax return are not subject to the work product privilege simply because there is a possibility that the IRS might challenge a return. *Id*. Similarly, the primary motivating purpose behind creating billing records is to secure payment from the client, even though there may be a possibility that the records might be used to support a request for fees from another party.

motion for attorneys' fees. Essex asserts that it has redacted information from the billing statements that are protected by attorney-client and/or attorney work product privileges.

Essex seeks leave to file unredacted copies of its billing statements and its fee agreement with the Court so that the Court can determine the nature and the extent of the work performed and whether it is appropriate to charge that work to Amerisure. Essex has not provided Amerisure with copies of the unredacted billing statements. Although Amerisure does not dispute that Essex's records contain "privileged information," (Docket 381 at 4), Amerisure argues that it should be allowed to review the unredacted billing records to determine whether it has a basis to contest specific time entries. Docket 381 at 2.

Assuming the billing statements and fee agreement contain privileged information,[1] Essex has impliedly waived the privilege. It has long been recognized that "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994).

---

[1] The Court has some doubt as to whether the records qualify for a privilege. Essex does not establish that the fee agreement it seeks to file under seal contains any privileged information. Indeed, Essex cites *Thomas v. F.F. Financial, Inc.*, 128 F.R.D. 192 (S.D.N.Y. 1989), for the proposition that fee arrangements are not confidential communications protected by the attorney-client privilege. Docket 378 at 4.

As to the billing statements, the Court finds it unlikely that confidential attorney-client communications are contained in the billing records. Further, although the billing statements may reflect an attorneys' thought processes or strategy, it is questionable that the billing statements are protected by the attorney work product doctrine.

To qualify for work product protection, "the primary motivating purpose behind the creation of the document" must be to aid in possible future litigation. *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). Thus, for example, papers generated by an attorney who prepares a tax return are not subject to the work product privilege simply because there is a possibility that the IRS might challenge a return. *Id*. Similarly, the primary motivating purpose behind creating billing records is to secure payment from the client, even though there may be a possibility that the records might be used to support a request for fees from another party.

Although the United States Court of Appeals for the Eleventh Circuit has not addressed an implied waiver of privilege based on submission of redacted billing statements in support of a fee petition, this precise issue has been addressed by the United States Court of Appeals for the D.C. Circuit.  In *Ideal Elec. Security Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997), one of the parties sought indemnification from the other for reasonable attorneys' fees based on a contract between the parties.  The court ruled that when the moving party offered billing statements as evidence in support of its claim for fees, the party "waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the fee award." *Id*. at 152.  The court further stated it was insufficient for the court to conduct an *in camera* review of the records, and emphasized the responding party's right to review the billing statements in their entirety.  *Id*.

Amerisure contends that it should have access to the unredacted billing statements to determine the reasonableness of the fees sought by Essex.  The Court finds that it would be manifestly unfair to Amerisure to require it to defend against the sizeable fee award claimed by Essex without the benefit of the full record upon which the fees are based.  The Court, therefore, **DENIES** Essex's motion to file the documents under seal for an *in camera* review by the Court.  The Court's ruling is without prejudice to move to file the unredacted documents under seal if the documents are provided to Amerisure.

A request for attorneys' fees "should not result in a second major litigation." *Norman v. Housing Auth.,* 836 F.2d 1292, 1303 (11th Cir. 1988).  Especially in cases like this where there is an entitlement to fees against one party in a multi-party litigation, resolution of the fees issue usually is

best handled by the parties through negotiation or mediation.  The Court directs the parties to confer further regarding Essex's motion for attorneys' fees and, if necessary, to confer regarding an appropriate confidentiality agreement for the unredacted billing statements.

To enable the parties to confer as directed and to give Amerisure the opportunity to review the unredacted records, the Court will grant Amerisure an extension of time to file its response to Essex's motion for attorneys' fees filed at Docket 379.  On or before March 29, 2007, the parties are to file a joint status report with the Court regarding their progress in resolving the attorneys' fee motion.  If the parties have reached an impasse regarding the attorneys' fees, Amerisure shall file its response to Essex's motion for attorneys' fees on or before April 6, 2007.

**DONE** and **ORDERED** in Orlando, Florida on March 1, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE